# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAYBORN RASHIED FRAZIER,

               Plaintiff,

   v.

DAVID DIGUGLIELMO, et al.,

               Defendants

CIVIL ACTION

No. 06-4186

Pollak, J.                                                                                   June 24, 2008

## OPINION

Before the court is defendants' motion to dismiss the claims of plaintiff Clayborn Rashied Frazier, a prisoner at the State Correctional Institution at Graterford ("Graterford"), against several Graterford officers and supervisors. Plaintiff's original complaint alleged that defendants violated plaintiff's constitutional rights and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*., by interfering with his mail and seizing legal materials from his cell. *See* Docket No. 1 (hereinafter, "Compl."). After defendants filed a motion to dismiss the complaint, *see* Docket No. 6 (hereinafter, "Mot."), plaintiff filed an amended complaint, *see* Docket No. 22 (hereinafter, "Amd. Compl."), containing a "clarification of issues complained of." Amd. Compl. at 6. Defendants moved to dismiss the amended complaint. *See* Docket No. 23 ("2d Mot."). Although plaintiff has filed several motions relating to discovery since the filing of defendants' second motion to dismiss, he has not filed a response to the merits of the motion to dismiss.

As defendants note, it is not clear on the face of the amended complaint whether plaintiff

intends the amended complaint to replace or to supplement the original complaint.[1]  Accordingly,

defendants incorporated their response to the original complaint in their response to the amended

complaint.  2d Mot. 2 n.1.  The court will construe plaintiff's amended complaint as a

supplement to, rather than a replacement of, plaintiff's original complaint.

## I.

When ruling on a 12(b)(6) motion to dismiss, a district court must "accept as true the

facts alleged in the complaint and all reasonable inferences that can be drawn from them."

*Markowtiz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).  Granting the motion is

appropriate only "where it is certain that no relief could be granted under any set of facts that

could be proved."  *Id.*  "[P]*ro se* prisoner complaints 'however inartfully pleaded' are held to

'less stringent standards than formal pleadings drafted by lawyers.'"  *Muhammad v. Carlson*, 739

F.2d 122, 123 (3d Cir. 1984) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Nevertheless, the court will not assume facts that cannot reasonably be inferred from a *pro se*

complaint in order to sustain a deficient claim.  *See Hurney v. Carver*, 602 F.2d 993, 995 (1st

Cir. 1979).

## II.

Plaintiff has filed suit against Graterford superintendent David Diguglielmo, mailroom

supervisor Kim Ulinski, deputy superintendent Michael Lorenzo, and corrections officers Jesse

White, Ardell Bell, Arthur Butler, and Gamalier Soto.  Plaintiff's claims arise from defendants'

---

[1] The facts alleged in the two complaints are largely the same; however, the first
complaint describes the events of July and August, 2005 in greater detail than the amended
complaint, and the amended complaint includes developments that occurred after the filing of the
original complaint.  The amended complaint's claims are set out in  a section titled, "clarification
of issues complained of."  Amd. Compl. at 6.  These clarifications relate only to statutory claims.

alleged interference with his mail and seizure of legal materials from his cell.

In combination, the complaint and amended complaint allege the following:

On July 1, 2005, plaintiff paid $8 to send a package to Sandra Frazier by certified mail. Compl. ¶ 10; Amd. Compl. ¶ 8 & Exh. D.  The package contained a draft writ of error coram nobis and supporting documents, which Ms. Frazier was to photocopy and forward to the Court of Common Pleas on plaintiff's behalf.  Compl. ¶¶ 10, 18.  Ms. Frazier did not receive the package.  *See* Compl. Appx. II (U.S. Postal Service complaint form filled out by Ms. Frazier on July 21, 2005).  Twelve days after plaintiff attempted to send the package, on July 13, 2005, an inquiry to the U.S. Postal Service "Track & Confirm" website regarding the tracking number on plaintiff's certified mail receipt generated a response that the Postal Service had no record of the package.  Amd. Compl. Exh. D, F (receipt and negative response).  That same day, plaintiff sent a request to the Graterford mailroom, inquiring whether the package had been mailed from the prison.  The following day, July 14, 2005, a staff member replied that the package had been sent. Amd. Compl. Exh. E.  On August 15, 2005, the package was returned to plaintiff, with Sandra Frazier's address blacked out on the package and on the green certified mail acknowledgment card.  Amd. Compl. ¶ 17.

Before the package was returned to plaintiff, on August 2, 2005, plaintiff re-drafted and mailed the writ of error coram nobis, this time sending it by certified mail to Vivian Miller in the Office of the Clerk of Quarter Sessions of Philadelphia's Criminal Justice Center.  Compl. ¶ 13; Amd. Compl. ¶ 13.  Two days later, plaintiff received the green certified mail acknowledgment card from Miller indicating that she had received the package.  Compl. Exh. C; Amd. Compl. Exh. G.  On August 11, 2005, plaintiff received notice from the Office of the Clerk of Quarter

Sessions stating that the office was not the proper place to file his writ, and that the writ would be forwarded to the motions court of the Criminal Justice Center.  Amd. Compl. ¶ 14 & Exh. H.

Meanwhile, on August 4, 2005, defendants White and Soto searched plaintiff's prison cell and confiscated two cartons of his legal materials.  Compl. ¶ 13.  Plaintiff was handcuffed for ninety minutes during the search.  Compl. ¶ 19.

Plaintiff received a memorandum dated August 10, 2005 from defendant Lorenzo explaining why the August 4 seizure occurred.  Amd. Compl. Exh. J.  According to the memorandum, the search was intended to confiscate materials related to the Uniform Commercial Code ("UCC"), which certain inmates were using "to file fraudulent or bogus liens against Department staff."  *Id.*  The memorandum stated that UCC-related materials were considered contraband and would not be returned, but that any non-UCC-related materials would be returned.  The memorandum also informed plaintiff that he had the right to file an objection to the seizure using an attached form and the right to file a grievance if his materials were not returned following his objection.  *Id.*

October 10, 2005, plaintiff's cell was again searched.  Defendants Bell and Butler confiscated the writ of coram nobis that plaintiff had attempted to mail on July 1 (and that was returned to him on August 15), as well as his complaints to the U.S. Postal Service.  Compl. ¶ 15; Amd. Compl. ¶ 18.

On June 27, 2007, approximately nine months after plaintiff filed the instant lawsuit, plaintiff received a letter from senior deputy attorney general Beth Ann Smith and a five-page inventory of the documents that had been seized from him on August 4, 2005.  *See* Amd. Compl. Exh. K.  The letter informed plaintiff that legal materials relating to his criminal and habeas cases could be returned to him, with the exception of his writ of error coram nobis, which was deemed

-4-

unreturnable because it contained exhibits pertaining to the UCC.  Two pages of the inventory listed items that would be returned to plaintiff, and three pages listed items that would not be returned.  *Id*.; Amd. Compl. ¶ 20.  On July 3, 2007, the items deemed returnable were returned to plaintiff.  Amd. Compl. ¶21.  On July 5, 2007, plaintiff was informed by letter that "pursuant to DOC policy, the confiscated UCC-related documents [could] not be shipped home" and that the UCC-related documents would "remain in a secured area at Graterford until the UCC cases are resolved."  Amd. Compl. ¶ 23 & Exh. L.

Plaintiff seeks compensatory and punitive damages; the return of all of his legal materials; an injunction barring Graterford officials from confiscating UCC-related materials; and costs and attorneys' fees.[2]  Compl. ¶¶ 22-24; Amd. Compl. at 7.

### III.

Plaintiff brings the instant claims pursuant to 42 U.S.C. §§ 1983 and 1985, claiming that defendants' interference with his mail and seizure of legal materials from his cell violated his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, the Commerce Clause, various criminal statutes, and RICO.  Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims for failure to state a claim on which relief can be granted.  Defendants also contend that they are entitled to qualified immunity with respect to plaintiff's claims for damages.

For the reasons discussed below, it is apparent that plaintiff's aggregate pleading — the complaint and amended complaint together — does state a claim under the First Amendment (as applied to states via the Fourteenth Amendment).  The court will grant defendants' motion to

---

[2] Plaintiff is proceeding *in forma pauperis* and *pro se*.

dismiss plaintiff's other constitutional and RICO claims.  The court also finds that defendants are entitled to qualified immunity against plaintiff's claim for money damages on the First Amendment claim.

A.

Plaintiff alleges two different claims under the First Amendment: first, that plaintiff's right of access to the courts was violated by defendants' confiscation of plaintiff's legal mail, and second, that his free speech rights were violated by the confiscation of all legal materials that defendants deemed related to the UCC.  *See* Compl. ¶¶ 18, 22.  Defendants contend that plaintiff's court access claim fails because plaintiff has alleged no actual injury; that his free speech claim fails under *Turner v. Safley*, 482 U.S. 78 (1987); and that defendants are, in any case, entitled to qualified immunity.  Mot. 4-9, 18-19.

1.

A prisoner's First Amendment rights include a right of access to courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To plead a violation of this right, a plaintiff must allege that the state's interference with his mail led to an "actual injury," meaning "that he or she has been hindered in an effort to pursue a nonfrivolous legal claim."  *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)); *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997).  In other words, "the inmate must show that his or her exercise of the right . . . of accessing the courts to secure judicial relief, has been infringed in some consequential way."  *Jones*, 461 F.3d at 359.  Further, the underlying legal claim must either attack the plaintiff's conviction (whether on direct appeal or via a habeas petition) or challenge the conditions of confinement.  *Lewis*, 518 U.S. at 354; *see also Christopher v. Harbury*, 536 U.S. 403, 414-15 (2006) (reaffirming that a "plaintiff must identify a 'nonfrivolous,' 'arguable,'

-6-

underlying claim," and that the "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint" (quoting *Lewis*, 518 U.S. at 353)).

The seized documents that might form the basis of a court access claim fall into three categories.  First, plaintiff alleges that defendants, without notice to plaintiff, confiscated a package mailed on July 1, 2005 containing a draft writ of coram nobis and did not return this package to him until August 15, 2005.  This copy of the writ, after being returned, was again confiscated from plaintiff on October 10, 2005.  However, plaintiff does not describe the contents of this writ or the judgment plaintiff sought to challenge through the writ.  Nor does plaintiff allege or even allude to any prejudice in any legal action caused by the writ's confiscation.  Plaintiff's bare assertion, without further elaboration, that defendants' seizure of his writ "obstructed" his right "to petition the government for redress of grievances," Compl. ¶ 18, is insufficient to "show that his . . . exercise of the right . . . of accessing the courts to secure judicial relief, has been infringed in some consequential way."  *Jones*, 461 F.3d at 359.[3]

Second, plaintiff alleges that on August 4, 2005 defendants seized legal documents relating to his criminal, PCRA, and habeas cases.  *See* Amd. Compl. Exh. K (inventory of seized items to be returned to plaintiff including "Folder containing caselaw relating to plaintiff's criminal and habeas cases" and "Envelope containing various papers relating to plaintiff's criminal habeas cases").  However, plaintiff does not allege that the seizure of these materials caused him prejudice in a legal challenge to his conviction or to his conditions of confinement, nor can any such prejudice be inferred from plaintiff's pleading or its attachments.  (The materials deemed unrelated to the UCC were returned to plaintiff on July 3, 2007.)

---

[3] Further, as described in greater detail above, plaintiff did eventually successfully mail a second copy of the writ on August 2, 2005.

Third, defendants seized various legal materials deemed by defendants to be related to the UCC.  Plaintiff has not alleged any actual injury relating to the seizure of these materials, which have not been returned to plaintiff.  (The court notes, further, that it is difficult to imagine how UCC-related litigation would fall under one of the categories of litigation by prisoners protected by the access-to-courts doctrine, namely, attacks on criminal convictions  and civil rights claims. *See Lewis*, 518 U.S. at 354.)

As defendants duly contend, *see* Mot. at 4-7, the absence of an alleged actual injury is fatal to plaintiff's court access claim.  *See Monroe v. Beard*, No. 05-04937, 2007 WL 764086, at *9-10 (E.D. Pa. Mar. 7, 2007) (rejecting an access to court claims in a factually analogous case, where the *pro se* plaintiffs had pled the underlying legal claims with greater specificity). Accordingly, defendants' motion will be granted with respect to this claim.

2.

Prisoners retain the right to freedom of speech under the First Amendment while they are incarcerated.  *See Beard v. Banks*, 126 S. Ct. 2572, 2577 (2006); *Ramirez v. Pugh*, 379 F.3d 122, 125-26 (3d Cir. 2004).  However, a "prison regulation [may] impinge[] on inmates' constitutional rights . . . if it is reasonably related to legitimate penological interests and [is] not an exaggerated response to those concerns."  *Turner v. Safley*, 482 U.S. 78, 89 (1987) (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

In assessing a prison regulation's "reasonableness," courts are to look at four factors. First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forth to justify it."  *Turner*, 482 U.S. at 89.  One such legitimate interest is the government's interest in prisoners' rehabilitation.  *See Ramirez*, 379 F.3d at 128.  "Certainly falling within the legitimate bounds of the interest [in rehabilitation] are

-8-

prison policies designed to target . . . behavioral patterns emerging during incarceration that present a threat of lawbreaking activity other than that for which the prisoner was confined." *Id*.

Second, a court should take into account "whether there are alternative means of exercising the right that remain open to prison inmates," because such alternative means weigh in favor of upholding the regulation. *Turner*, 482 U.S. at 90.  Third, a court should determine what the effect of any accommodation of a prisoner's constitutional right would be on the prison system; if the accommodation would cause "a significant 'ripple effect' on fellow inmates or on prison staff," a court should be hesitant to strike the regulation. *Id.*  Fourth and lastly, "if an inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests," such evidence lends weight to a prisoner's constitutional claim. *Id.* at 90-91.

Plaintiff claims that he "has the free speech rights under the First [A]mendment to access the Uniform Commercial Code," and that defendants' seizure of his UCC-related materials violated those rights.  Compl. ¶ 22.

Defendants move to dismiss this claim on a single ground.  Citing several cases of prisoners "using the UCC as a means of harassing judges, prosecutors and prison officials by filing fraudulent 'security interests' against them," defendants contend that it "cannot be doubted" that "DOC officials have a legitimate governmental interest in banning UCC-related materials from Pennsylvania prisons."  Mot. 7-8 (citing, *inter alia*, *Umbarger v. Caruso*, 2006 WL 2039979 at *5-6 (W.D. Mich. July 19, 2006) (dismissing First Amendment claim because, given the circumstances described in the prison officials' memorandum attached to the complaint, "preventing UCC materials from entering the prison environment was patently within the reasonably legitimate penological objectives of the prison officials")).

The court agrees with defendants that, under the circumstances described in the memorandum distributed to Graterford prisoners whose UCC-related materials were seized, *see* Amd. Compl. Exh. J, the confiscation of UCC-related materials would serve a legitimate penological objective.  However, the existence of a legitimate penological objective does not end the court's inquiry under *Turner*.  "A decision or practice that represents an 'exaggerated response' to even a legitimate penological concern will not justify an infringement of First Amendment rights."  *DeHart v. Horn*, 227 F.3d 47, 59 (3d Cir. 2000) (en banc).  Emphasizing the necessity of an adequate record as bearing on the *Turner* inquiry, the Third Circuit has frequently reversed district courts' premature dismissals under *Turner*.  *See, e.g.*, *id.* (reversing dismissal on pleadings); *Ramirez*, 379 F.3d at 130 (same); *Wolf v. Ashcroft*, 297 F.3d 305, 310 (3d Cir. 2002) (same).  On the pleadings now of record, the court finds itself unable to say that defendants' abridgment of plaintiff's right to free speech passes muster under *Turner*.  For instance, the court notes that the list of materials seized by defendants on August 4, 2005 (and which defendants have since declined to return to plaintiff) includes such items as an "International Driving Permit Information Package."  *See* Amd. Compl. Exh. K.  It is not apparent to the court how this item relates to the asserted legitimate penological interest.

Accordingly, defendant's motion to dismiss will be denied with respect to plaintiff's free speech claim.

3.

Defendants contend that, even if plaintiff has alleged a First Amendment claim, plaintiff's claim for money damages must be dismissed on qualified immunity grounds.

The question whether defendants are entitled to qualified immunity should be resolved at the earliest possible stage of litigation, because "[i]f a case is erroneously permitted to go to trial,

-10-

then qualified immunity is effectively lost." *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a

defendant pleading qualified immunity is entitled to dismissal before the commencement of

discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The court has already decided, above, that plaintiff has alleged facts sufficient to support

a First Amendment free speech claim. Accordingly, the court moves to the question "whether

the constitutional . . . right allegedly violated by the defendant[s] was 'clearly established' at the

time the violation occurred." *Yarris v. County of Delaware*, 465 F.3d 129, 140-41 (3d Cir.

2006). To ascertain if a right is clearly established, a court should inquire "whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier v. Katz*, 533 U.S. 194, 202 (2001). "[I]n light of pre-existing law the unlawfulness [of

defendants' actions] must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The court cannot find that it would have been clear to a reasonable prison official that it

would violate prisoners' right to free speech under the First Amendment to seize legal materials

that the prison officials believed would be used to file fraudulent liens. The Supreme Court has

upheld as facially valid under *Turner* a prison regulation barring, *inter alia*, publications that

"might facilitate criminal activity." *Thornburgh v. Abbott*, 490 U.S. 401, 416-17 (1989).

Accordingly, when faced with the prospect of criminal activity in the form of prisoners using the

UCC to file fraudulent financing statements,[4] a prison official might reasonably believe that

---

[4] Even if the officers did not have evidence that prisoners at Graterford had begun using the UCC in this fashion, *but see Monroe v. Beard*, No. 05-04937, 2007 WL 2359833, at *2-4 (E.D. Pa. Aug. 16, 2007) (describing evidence of Graterford officials' awareness of UCC abuse starting in 2004), it appears that prisoners' abuse of the UCC is widespread. *See Hudson v. Caruso*, No. 05-cv-32, 2007 WL 2363308, at *5 (W.D. Mich. Apr. 16, 2007) (citing cases in seven districts); *see, e.g.*, *United States v. Joiner*, 418 F.3d 863 (8th Cir. 2005) (appeal of

-11-

seizing UCC materials to prevent that criminal activity would not violate prisoners' First Amendment rights.  Indeed, in the years since the August 2005 seizure at Graterford that constitutes the crux of plaintiff's pleading, courts have held that Graterford's ban on UCC-related materials, as well as similar policies authorizing the seizure of UCC-related materials at other prisons, do not violate prisoners' First Amendment rights under *Turner*.  *See, e.g.*, *Monroe v. Beard*, No. 05-04937, 2007 WL 2359833, at *15-21 (E.D. Pa. Aug. 16, 2007) (granting summary judgment in favor of prison officials because plaintiff prisoners had not proven that Graterford's UCC seizure policy violated the First Amendment under *Turner*); *Hudson v. Caruso*, No. 05-cv-32, 2007 WL 2363308, at *4-5 (W.D. Mich. Apr. 16, 2007) (finding UCC confiscation policy to be "reasonably related to legitimate penological interests"); *Umbarger v. Caruso*, 2006 WL 2039979 at *5-6 (W.D. Mich. July 19, 2006) (dismissing First Amendment claim because, given the circumstances described in the prison officials' memorandum attached to the complaint, "preventing UCC materials from entering the prison environment was patently within the reasonably legitimate penological objectives of the prison officials").

Further, to the extent that defendants seized legal materials other than the UCC materials, the court finds that it is not clearly established law that the prison officials, in order to seize all UCC-related materials, were required to sort through plaintiff's papers in his cell rather than seizing all of his documents and then returning to him those that did not appear to be related to the UCC.  According to the documents attached by plaintiff to his pleading, defendants provided plaintiff with a complaint form to challenge the seizure, and eventually returned to him those materials that defendants deemed unrelated to the UCC litigation (as well as an inventory of

---

convictions for filing from prison false UCC financing statements against various public officials in 2002 and 2003).

allegedly UCC-related materials).  *Cf. Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) ("[W]here the State must take quick action, or where it is impractical to provide meaningful predeprivation process, due process will be satisfied by a meaningful postdeprivation remedy.").

The court therefore finds that defendants are entitled to qualified immunity with respect to plaintiff's First Amendment claim.  His claim for money damages will be dismissed, leaving only his claim for injunctive relief.  *See* Compl. ¶ 22.

B.

The court will grant as unopposed defendants' motion to dismiss the balance of plaintiff's claims, brought under the Fourth,[5] Fifth, Sixth,[6] Eighth,[7] and Fourteenth[8] Amendments; the

---

[5] *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell" since "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell").

[6] Plaintiff's complaint does not elucidate his claims under the Fifth and Sixth Amendments, and it is not obvious to the court what those claims (as distinct from a claim directly under the Fourteenth Amendment) might be.  *See* Compl. ¶ 20.

[7] Plaintiff has not alleged that he was subjected to pain during the search of his cell; he alleges only that he was handcuffed for ninety minutes, a *de minimis* use of physical force insufficient to support an Eighth Amendment claim.  *See Hudson v. McMillian*, 503 U.S. 1, 5-6, 9 (1992).

[8] Plaintiff has not alleged that defendants failed to provide him with a post-deprivation remedy, or alleged that the post-deprivation remedy was defective, and the exhibits attached to his pleading include a memorandum from defendants attaching a form to file objections to the August 4, 2005 seizures and informing plaintiff that he would be able to file a grievance if his objections were not successful.  *See Tillman*, 221 F.3d at 422 (3d Cir. 2000).

Commerce Clause[9]; 42 U.S.C. § 1985[10]; 18 U.S.C. §§ 1581-88, 1701-05, and § 1951[11]; and

RICO.[12]  *See* Local R. Civ. P. 7.1(c) ("In the absence of a timely response, [a] motion may be

granted as uncontested . . . .").[13]

IV.

For the reasons set forth above, the court will grant defendants' motion to dismiss on all

claims except the free speech claim, with respect to which the court holds that defendants are

entitled to qualified immunity.  Plaintiff will therefore be permitted to proceed only on his free

speech claim for injunctive relief.  An appropriate order follows.

---

[9] Although the Supreme Court has held that a Commerce Clause claim can be brought under 42 U.S.C. § 1983, *see Dennis v. Higgins*, 498 U.S. 439, 451 (1991), plaintiff has not alleged facts supporting a claim that defendants have interfered with interstate commerce.

[10] Plaintiff has not alleged facts to support the existence of a conspiracy.  *See Farber v. City of Patterson*, 440 F.3d 131, 134 (3d Cir. 2006) (elements are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States"); *id*. at 135 (plaintiff must also allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) (A plaintiff does not state a claim by asserting "conclusory allegations of deprivations of constitutional rights.").

[11] These are criminal statutes that do not create a civil cause of action.

[12] *See Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (RICO plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity)"; 18 U.S.C. § 1961 ("racketeering activity" includes "any act which is indictable under" certain federal criminal law statutes, not including 18 U.S.C. §§ 1701-05).  Although violations of 18 U.S.C. §§ 1581-88 and § 1951 do qualify as "racketeering activity," *see* 18 U.S.C. § 1961, plaintiff's pleading does not allege a pattern of facts in support of the existence of slavery or peonage, *see id*. §§ 1581-88, nor a pattern of robbery, extortion, or threats concerning physical violence, *see id*. § 1951.

[13] Plaintiff is on notice of the requirements of Rule 7.1(c), which the court quoted in its order of July 27, 2007 in this case.  *See* Docket No. 21 (ordering plaintiff to file either a response to defendants' motion to dismiss his original complaint or an amended complaint, on penalty of dismissal of his action).

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CLAYBORN RASHIED FRAZIER,                         CIVIL ACTION

            Plaintiff,                         No. 06-4186

   v.

 DAVID DIGUGLIELMO, et al.,

            Defendants

**ORDER**

      **AND NOW**, this 24th day of June, 2008, for the reasons set forth in the accompanying opinion, defendants' motion to dismiss, *see* Docket No. 23, is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims are dismissed, with the exception of his claim that defendants violated his right to free speech under the First Amendment.  Because defendants are entitled to qualified immunity with respect to this claim, plaintiff's claim for money damages is also dismissed; plaintiff may proceed solely on his claim for injunctive relief.

                                  /s/ Louis H. Pollak
                                  _____
                                  Pollak, J.